

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

RICHARD WEINGARTEN
*Assistant Corporation Counsel*
Phone: (212) 356-2356
Fax: (212) 788-9776
rweingar@law.nyc.gov

April 29, 2015

**BY ECF**
Honorable James L. Cott
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *Altin Nicaj v. City of New York, et al.*, 14 Civ. 4215 (AT)(JLC)

Dear Judge Cott:

I am an Assistant Corporation Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and the attorney assigned to the defense of the above-referenced matter.  Defendants City of New York ("City") and Taxi & Limousine Commission ("TLC") Captain Arocho and Inspectors Beharry and Lombardi write to move to compel responses to certain written discovery served by defendants to which plaintiff has refused to respond.  Accordingly, pursuant to Rule II(B)(1) of Your Honor's Individual Practices, I submit this letter to respectfully request that the Court schedule a conference, pursuant to Local Rule 37.2, regarding the within disputes.

By way of background, plaintiff claims that he was subjected to a false arrest during the early morning hours of September 21, 2013 by several TLC officers.  Plaintiff claims that he is self-employed, via a company named Waldorf Astoria Travel Corp. which was incorporated in New York in 2012, as a personal chauffeur.  As part of this company, plaintiff utilizes a single vehicle – a 2006 Lincoln Limousine – in which he allegedly picks up individual clients, but claims that he never picks up street fares.

According to defendants, however, plaintiff's limousine was pulled over by TLC officers after plaintiff was observed illegally operating a for-hire vehicle without a TLC license (i.e. picking up a street fare).  After plaintiff eventually stopped his limousine pursuant to the TLC officers' orders, plaintiff fled the scene on foot.  Following the arrival of a tow truck to remove plaintiff's limousine from the scene, plaintiff returned and attempted to drive it off of the tow truck lift.  As a result of this secondary conduct, plaintiff was placed under arrest and charged with obstructing governmental administration.

To date, the parties have conducted the depositions of all parties and non-party Shaban Xhema, though five (5) additional non-party depositions are schedule over the next several weeks.  As the result of testimony provided by plaintiff at his deposition held on March

24, 2015, defendants sought from plaintiff on April 21, 2015 the following documents: (1) disclosure of plaintiff's "Alien File" from the Department of Homeland Security ("DHS"); (2) production of any and all documentation reflecting the application and/or status of plaintiff's currently pending request for a green card; (3) 2012 – 2014 tax returns (state and federal) for plaintiff and the Waldorf Astoria Travel Corp.

Plaintiff's counsel – David Zelman, Esq. – objected to the disclosure of the documents referenced above on only one ground: that the aforementioned document demands were made by defendants within 30 days of the close of discovery.[1]  The parties discussed these issues via email, but were unable to resolve the dispute.

In light of the above, defendants seek rulings that they are entitled to: (1) disclosure of plaintiff's "Alien File" from the Department of Homeland Security; (2) production of any and all documentation in plaintiff's possession regarding is purportedly pending application for a green card; (3) 2012 – 2014 tax returns (state and federal) for the Waldorf Astoria Travel Corp.

1.      **Plaintiff's "Alien File"/Documentation Regarding Plaintiff's Green Card Application**

According to the DHS, they maintain a file – termed an "Alien File" or "A-file" – for any documents related to lawful and/or unlawful aliens.[2]  Moreover, based on defendants' consultation with an attorney with experience in immigration law, this file will contain information and documents reflecting: (1) the basis for an individual's original deportation order; (2) the minimum length of any such deportation order; and (3) any attempt to legally re-enter the U.S. by virtue of a green card and/or visa application.  Based on defendants' research, it appears that, at a minimum, an individual is ineligible to re-enter the U.S. for at least five (5) years after his original deportation.[3]

At his deposition, plaintiff admitted that he had been deported "a few years ago," but claimed he did not know exactly when he was deported and did not remember why he had been deported.[4]  Plaintiff likewise testified that, after returning to his native Albania upon deportation, he returned to the U.S. by flying from Albania to Italy to Mexico, and then crossing the U.S./Mexico border into Arizona.  Plaintiff further acknowledged that, when crossing the

---

[1]   Discovery is currently set to close on May 11, 2015.  *See* Docket Entry No. 25.

[2]   http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_uscis_nfts.pdf; *see also* http://www.uscis.gov/history-and-genealogy/genealogy/files-numbered-below-8-million#WhatAreAFiles

[3]
    http://www.bc.edu/content/dam/files/centers/humanrights/pdf/Returning%20to%20the%20US%20AfterDeportation%20-%20A%20Self-Assessment%20FINAL.pdf, at p. 8.

[4]   According to plaintiff's RAP sheet, he was deported in June 2011.

U.S./Mexico border, he did not go through customs but did "remember" how he physically crossed the border (i.e. on foot or otherwise), whether he provided any U.S. federal agents with any documents upon re-entry, whether he was alone during his re-entry, or how he thereafter traveled from Arizona to New York, where he currently lives. Finally, plaintiff testified that, since his re-entry, he has begun the process of obtaining his green card, though he does not remember when that process began.

      Defendants seek plaintiff's Alien-file and any documents in his possession regarding his green card application for several reasons. As an initial matter, the Alien-file should provide defendants the basis for plaintiff's initial deportation, which he – conveniently – cannot recall the basis of. To the extent plaintiff was deported as the result of a criminal conviction for a federal offense or a state offense outside of New York, this information may be admissible at trial pursuant to Federal Rule of Evidence 609.[5] Second, an individual's illegal re-entry in to the United States is a federal offense, *see* 8 U.S.C. § 1325(a), which may be admissible at trial pursuant to Federal Rule of Evidence 404(b). Given plaintiff's inability to recall how he physically re-entered the U.S. or whether he provided any U.S. federal agents with any documents upon re-entry, combined with the fact that plaintiff appears to have re-entered the U.S. no more than 2 ½ years after his deportation despite the 5-year minimum wait period, the Alien-file should shed light on the propriety of said re-entry. Third, plaintiff's convenient inability to remember whether he presented any documentation upon his re-entry in to the U.S. raises a question as to whether he supplied forged documents to any federal agents to re-enter. To the extent he did so, and there is any indication of same in his Alien-file, this evidence may be admissible at trial pursuant to Federal Rules of Evidence 404(b) and/or 608(b)(1). Finally, the apparent 5-year minimum wait period for re-entry in to the U.S. following deportation calls into question the truth of plaintiff's assertion at his deposition that he currently has a green card application pending. To the extent the Alien-file does not contain any documentation reflecting a green card application and/or plaintiff cannot produce copies of any such documentation which pre-dates his deposition, it would stand to reason that plaintiff committed perjury during his deposition, which may be admissible at trial pursuant to Federal Rules of Evidence 608(b)(1) and/or 609.

      In addition to the above, defendants note that several courts, including the Second Circuit, have permitted cross examination at trial regarding a plaintiff's immigration status. For example, in *Bonilla v. Jaronczyk*, 354 F. App'x 579 (2d Cir. 2009), where a plaintiff claimed excessive force pursuant to § 1983, the Second Circuit affirmed the district court's decision to

---

[5]   In fact, defendants have very good reason to believe that plaintiff has been convicted of criminal offenses by the federal government and/or outside New York. First, at plaintiff's deposition, when asked how many times he had been arrested notwithstanding the incident alleged in the complaint, plaintiff stated, "I don't remember; a few times," when in fact, according to NYPD records, plaintiff has been arrested a minimum of 18 times in New York City alone. More significantly, despite plaintiff's claim in response to defendants' interrogatory requests that he had never been arrested outside of New York, plaintiff's New York State RAP sheet contains the following notation: "[c]riminal record in other states or in multiple FBI files for NYS."

allow defendants to question plaintiff regarding his alleged use of false papers to re-enter the United States as conduct bearing on his "character for truthfulness or untruthfulness," pursuant to Federal Rule of Evidence 608(b)(1).  Similarly, in *Hernandez v. Kelly*, 85 Fed. R. Evid. Serv. (Callaghan) 572 (E.D.N.Y. 2011), where a plaintiff likewise claimed excessive force pursuant to § 1983, the Court granted defendants' motion *in limine* to cross examine plaintiff regarding his conviction for illegal re-entry into the U.S. as a crime which involved a false statement or dishonesty pursuant to Federal Rule of Civil Prcoedure 609(a)(1).  *See Hernandez v. Kelly*, 85 Fed. R. Evid. Serv. (Callaghan) 572 (E.D.N.Y. 2011)

In sum, and in light of the above, defendants' request for plaintiff's Alien-file and for any and all documents in his possession reflecting his purportedly pending application for a green card is reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's inability to remember key facts surrounding his deportation and subsequent re-entry, combined with the fact that individuals cannot, absent extraordinary circumstances, legally re-enter the U.S. for at least five years, raise significant questions regarding plaintiff's credibility.  Plaintiff's Alien-file and any documents in his possession regarding his alleged green card application are the only concrete manner in which to shed light on any of these topics.

As mentioned above, plaintiff's only argument against disclosure of these documents is that they were requested within thirty days of the close of discovery.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(a), responses to document requests are due within 30 days, however "[a] shorter or longer time may be...ordered by the court."  Defendants recognize that these requests were made 20 days before the close of discovery, however ask that the Court nonetheless order production of the requested documents for several reasons.  As an initial matter, the above requests were made as a result of information learned during plaintiff's deposition, which did not occur until March 24, 2015, which at the time was 27 days before the close of discovery.  *See* Docket Entry No. 23.  Second, prior to the taking of plaintiff's deposition and the information learned therein, defendants do not believe they would have had any good-faith basis to seek the immigration-related documents they now seek.  Finally, even once defendants learned of the circumstances surrounding plaintiff's immigration status at his deposition, they nonetheless needed to perform extensive research – including consultation with an outside immigration attorney – in order to determine what documents and/or information would provide the information defendants sought.  Once the information sought by defendants became known and relevant to this lawsuit, they requested same at the earliest possible time.  In light of the above, and because plaintiff would not be prejudiced in any manner by production of these documents at this juncture of discovery, defendants submit they should not be precluded from the discovery of essential information on the basis of the procedural argument advanced by plaintiff.

To the extent the Court is inclined to grant defendants' request for disclosure of plaintiff's Alien File, disclosure by the DHS would require plaintiff to execute a release, which can be found on their website.[6]

---

[6]   http://www.uscis.gov/sites/default/files/files/form/g-639.pdf

4

**2.      Plaintiff/Waldorf Astoria Travel Corp.'s state and federal 2012 – 2014 tax returns**

As the Court is likely aware, defendants originally sought plaintiff and the Walford Astoria Travel Corp.'s tax returns as part of their initial discovery demands in November 2014.  Following plaintiff's refusal to provide these documents, defendants sought to compel the production of same.  *See* Docket Entry No. 15.  Your Honor subsequently denied defendants' request without prejudice to renewal following the taking of plaintiff's deposition. *See* Docket Entry No. 20, at p. 2 – 3.

Throughout this litigation, and as touched on above, plaintiff has claimed that the limousine involved in the September 21, 2013 is used in connection with the Waldorf Astoria Travel Corp. and the chauffeur services this company allegedly provides.  During his deposition, plaintiff claimed that he owns the Waldorf Astoria Travel Corp., is its only current employee, that he charges approximately $75 per hour for its services, and grosses $2,500 – $3,500 per week.  Furthermore, plaintiff testified that he did not remember if the Waldorf Astoria Travel Corp. filed state or federal taxes in 2013 and 2014.

Plaintiff's claim that the limousine involved in the September 21, 2013 incident is used purely for the Waldorf Astoria Travel Corp.'s chauffer services cuts directly against defendants' belief that he was illegally operating a for-hire vehicle without a TLC license on the night in question.[7]  To the extent that plaintiff and/or the Waldorf Astoria Travel Corp. have not filed taxes since 2012 (the year the company was first incorporated) or said tax returns reflect taxable revenue which wildly contradicts plaintiff's claim that the company grosses $2,500 – $3,500 per week (the equivalent of $130,000 – $182,000 per year), it makes it more likely that the Waldorf Astoria Travel Corp. is merely being used as a front to hide plaintiff's illegal for-hire service.  As such, plaintiff and the Waldorf Astoria Travel Corp.'s tax returns are highly relevant to determining  the extent to which, if any, plaintiff's actually uses his limousine for chauffeuring services as claims.

In light of the above, defendants seek rulings that they are entitled to: (1) disclosure of plaintiff's "Alien File" from the Department of Homeland Security; (2) production of any and all documentation reflecting the application and/or status of plaintiff's currently pending request for a green card in his possession; and (3) 2012 – 2014 tax returns (state and federal) for plaintiff and the Waldorf Astoria Travel Corp.

Respectfully submitted,

/s/

Richard Weingarten
*Assistant Corporation Counsel*

---

[7]    It is worth noting that, despite plaintiff's claim that he never used his limousine for street fares, he was found guilty of illegally operating a for-hire vehicle without a TLC license by Office of Administrative Trials and Hearings (otherwise known as "OATH") in January 2013.

Cc:     **<u>BY ECF</u>**
        David Zelman, Esq.
        Attorney for *Plaintiff*
        612 Eastern Parkway
        Brooklyn, New York 11225