USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALTIN NICAJ,

      Plaintiff,

 -v-

THE CITY OF NEW YORK, *et al.*,

      Defendants.
------------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

14-CV-4215 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Altin Nicaj seeks reconsideration of the Court's decision granting judgment as a matter of law as to certain of his claims in favor of defendants Mark Beharry, Christopher Lombardi, Milton Arocho, and the City of New York (together, "Defendants"), and a new trial pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Nicaj's motion.

### I. BACKGROUND

Nicaj brought this action in June 2014 against the City of New York and New York City Taxi and Limousine Commission ("TLC") officers Mark Beharry, Christopher Lombardi, and Milton Arocho in both their individual and official capacities. In his complaint, Nicaj alleged claims of false arrest, excessive force, malicious prosecution, denial of fair trial, and failure to intervene under 42 U.S.C. § 1983, and for false arrest, excessive force, malicious prosecution, and conversion under New York state law. Complaint, dated June 10, 2014 ("Compl."),

1

Dkt. No. 2.¹ His complaint stemmed from his arrest on September 21, 2013 and subsequent events, including the towing of the car he was driving by the TLC officers. *Id.* ¶¶ 9-12. Following the close of discovery, the parties consented to my jurisdiction for all purposes. Notice, Consent, and Reference, dated Apr. 12, 2016, Dkt. No. 58.

Trial commenced on January 30, 2017, and after Nicaj had presented his case to the jury, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). Trial Transcript ("Tr.") at 187-217. Following argument on the motion on both January 31 and February 1, 2017, the Court granted Defendants' motion as to all of Nicaj's claims, except for his false arrest claim. Tr. at 217; 412-14. That claim was thereafter submitted to the jury, which rendered a verdict for Defendants. Verdict Form, dated Feb. 1, 2017, Dkt. No. 104. Judgment was then entered on February 2, 2017. Judgment, Dkt. No. 106.

On March 27, 2017, Nicaj timely moved for a new trial pursuant to Federal Rules of Civil Procedure 59 and 60. Motion, dated Mar. 27, 2017, Dkt. No. 110.² In his motion, Nicaj argues that the Court erred when it dismissed his "illegal strip search" claim, his malicious prosecution claim, and his conversion claim. Memorandum of Law in Support of Plaintiff's Motion for a New Trial, dated Mar. 27, 2017 ("Pl. Mem."), at 3-4, Dkt. No. 111. Defendants have opposed Nicaj's

---

¹ Nicaj also alleged a state law cause of action denominated "respondeat superior." Compl. ¶¶ 90-94.

² Although the original deadline was March 15, 2017, the Court granted Nicaj's request for an extension. Order, dated Mar. 14, 2017, Dkt. No. 109.

2

motion, noting that "plaintiff's moving papers are devoid of any citation to the record generated at trial nor was plaintiff's counsel, David Zelman, Esq. [("Zelman")], even present for the majority, if not the entirety, of the proceedings before the jury." Defendants' Opposition to Plaintiff's Motion for a New Trial, dated Apr. 27, 2017 ("Def. Opp."), at 3, Dkt. No. 113. Nicaj replied to Defendants' opposition on May 3, 2017. Memorandum of Law in Reply, dated May 3, 2017 ("Reply"), Dkt. No. 115.

## II. DISCUSSION

### A. Legal Standard

"Reconsideration of a previous order by the court [pursuant to Rule 59(e)] is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 395 (S.D.N.Y. 2016) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions . . . that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 402, 403–04 (S.D.N.Y. 2014) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (alterations in original), *aff'd*, 602 F. App'x 552 (2d Cir. 2015); *Schoolcraft v. City of N.Y.*, No. 10-CV-6005 (RWS), 2017 WL 1194703, at *1 (S.D.N.Y. Mar. 31, 2017) ("The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the

original motion and that might 'materially have influenced its earlier decision.'") (quoting *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-CV-2669 (LAP), 2010 WL 3958841, at *1 (S.D.N.Y. Sept. 27, 2010) (quoting *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "The motion to reconsider cannot properly advance new facts, issues or arguments not previously presented to the court." *Gottdiener*, 35 F. Supp. 3d at 404 (internal quotation marks omitted).

Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order, or proceeding." "Rule 60(b) provides an equitable remedy that 'preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'" *Receivables*, 187 F. Supp. 3d at 395 (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994)). "The rule 'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice'" and "is properly invoked where there are extraordinary circumstances, . . . or where the judgment may work an extreme and undue hardship." *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 300 (S.D.N.Y. 2001) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)) (alteration in original).

4

## B. Nicaj's Motion for a New Trial Is Denied

As a preliminary matter, counsel for Nicaj never ordered a trial transcript, and his motion papers fail to cite the trial record. Thus, Nicaj's recitation of the evidence introduced at trial and his summary of the Court's analysis in granting Defendants' Rule 50(a) motion are based solely on counsel's memory. Even more problematic on that score is that Nicaj's motion papers were submitted by Zelman, who did not attend the trial (except to make legal arguments after all the evidence, except one witness, had been received), and therefore his description of the record and accompanying arguments are not even based on his own memory or notes from trial but received second-hand from Nicaj's trial counsel Glenn Verchick, Esq. ("Verchick"). Tr. at 354-63. As a result, the Court ordered the trial transcript for its own review, and, as already seen, cites to the transcript as necessary throughout this opinion.

### 1. Nicaj did not plead a state law illegal strip search claim

Nicaj first argues that the Court should not have dismissed his illegal strip search claim, even though he failed to specifically identify who conducted the search. Pl. Mem. at 4–5. At trial, Nicaj testified only that he "was strip searched," and that "they put me in a private room, . . . [t]hat's where they did the strip search," without identifying who "they" were. Tr. at 94.³ Nonetheless, he contends

---

³ In his memorandum in support of a new trial, Zelman states that "[a]t trial, Plaintiff testified that, while at the precinct following his arrest, he was strip-searched by two non-defendant officers." Pl. Mem. at 3; *see also* at 5 ("he was strip-searched by two uniformed officers"). But Nicaj did not testify that *two officers* had strip searched him. He merely said that "*they* did that to [him] that evening." Tr.

5

that "[a] state law claim may proceed on a *respondeat superior* theory against a municipality, even though the individual employee who acted in a wrongful manner has not been identified." Pl. Mem. at 4. While the Court does not contest this general proposition, the issue the Court had raised at trial in granting Defendants' Rule 50(a) motion was whether Nicaj had raised an illegal strip search claim pursuant to state law at all. Tr. at 354-55. Nicaj has not addressed that question in his post-trial papers.

Nicaj argues that he pled and offered evidence of a "state law strip search claim," and therefore this claim should have been presented to the jury, because he could proceed on a theory of *respondeat superior* that the City was vicariously liable (even though he did not identify the individual officers responsible). Pl. Mem. at 5. However, Nicaj has not identified for the Court, neither when the claim was dismissed under Rule 50 at the trial, nor in his submissions here, whether he pled a state law strip search claim at all. *See* Tr. at 207-08. In fact, his complaint does not contain an illegal strip search cause of action. The only references to a strip search are made in passing in the complaint's preliminary statement, and in one paragraph recounting the alleged facts in which Nicaj says he was strip searched. Compl. at ¶¶ 1, 13. Though a strip search claim was included in the parties' joint

---

at 95. Thus, it is not at all clear from Nicaj's testimony that the individuals who allegedly strip searched him, whoever "they" may be (and however many there were), were employees of the City of New York acting in their official capacity, a critical element of Nicaj's respondeat superior theory regarding this claim. This is but one of several examples where counsel provides an inaccurate summary of the trial testimony.

6

proposed jury charge, both Nicaj and Defendants articulate the applicable standard based on federal law. Proposed Jury Instructions, dated June 24, 2016 ("Jury Charge"), Dkt. No. 81, at 51–52.[4]

Moreover, Nicaj does not identify what the legal basis for a state law strip search claim would be. Pl. Mem. at 4–5. Although he cites to several cases discussing *respondeat superior* theory under state law, none involves state law illegal strip search claims, and the only cases he cites discussing strip searches are based on federal constitutional jurisprudence. Some New York state courts have considered whether an unlawful strip search could raise an assault or battery claim. *See, e.g., Shields v. City of N.Y.*, No. 22414/2013, 2015 N.Y. Misc. LEXIS 3362, *10, 2015 NY Slip Op 31756(U), 8 (N.Y. Sup. Ct. Aug. 19, 2015); *Perciaccanto v. City of N.Y.*, 47 Misc. 3d 1216(A), 16 N.Y.S.3d 794 (N.Y. Sup. Ct. 2015); *see also In re Nassau Cty. Strip Search Cases*, 958 F. Supp. 2d 339, 353–54 (E.D.N.Y. 2013) (raising the question as to whether unlawful strip searches violate Article I, Section 12 of the New York State Constitution). However, it does not appear that any court has found a stand-alone claim for an "illegal strip search" under state law to be cognizable. More importantly, at no point in advance of trial, during the proceedings related to defendants' Rule 50 motion, or in any subsequent

---

[4] In the proposed jury charge on the purported strip search claim, the language was: "Plaintiff alleges that Defendants Lombardi and Beharry subjected him to an unreasonable strip search in violation of his right under the Fourth Amendment to the United States Constitution." *Id.* at 52. However, as noted, Nicaj did not identify the Defendants – or anyone else – as responsible for the alleged strip search during his trial testimony, rendering this proposed charge inapplicable.

7

submissions has Nicaj maintained that he pled state law claims of assault and battery based on his strip search. Nicaj has pointed to no applicable law that the Court overlooked when it determined that he had not pled a state law unlawful strip search claim, and "[a] party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories." *Gottdiener*, 35 F. Supp. 3d at 404.

As Nicaj has not demonstrated that he pled a state law strip search claim, the Court is left to conclude that to the extent he had such a claim, it was based on federal law. But "[i]t is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct." *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). As "the doctrine of *respondeat superior* does not apply to claims under § 1983," the Court correctly dismissed Nicaj's claim when he did not identify which of the Defendants conducted a strip search of him. *Id.*; *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

### 2. Nicaj did not establish the required elements of a malicious prosecution claim

"The elements of a malicious prosecution claim in New York are: (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, and (4) the prosecution was terminated in the plaintiff's favor." *Negron v. Wesolowski*, 536 F. App'x 151, 153 (2d Cir. 2013). In granting Defendants' Rule 50 motion to dismiss Nicaj's malicious prosecution claim, the Court concluded that

there was "no testimony or other evidence in the record to suggest that any of the three individually named defendants can be shown to have referred the charges to the prosecutor," and further, that "a certificate of disposition merely noting that the criminal charges were dismissed is insufficient to constitute a favorable termination." Tr. at 202-03.

As to the initiation prong, Defendants argued in support of their Rule 50 motion, Tr. at 188-89, and reiterate in their opposition to the pending motion, Def. Opp. at 5-6, that the evidence introduced at trial was insufficient to establish that Defendants initiated the prosecution. Although the misdemeanor complaint signed by Beharry was admitted into evidence at trial, this occurred during Beharry's cross-examination, Tr. at 334, and was not offered as part of Nicaj's case-in-chief. That in itself presents a threshold impediment to Nicaj's argument on the initiation prong. Moreover, the supporting deposition submitted to the District Attorney signed by Arocho, now offered belatedly by Nicaj, see Declaration of David Zelman dated March 27, 2017 ("Zelman Dec."), Ex. B, Dkt. No. 112, was not introduced into evidence at trial. In fact, it was not even submitted to the Court as part of Nicaj's pre-marked trial exhibits in the Joint Pretrial Order.

Likewise, as to the favorable termination prong, at trial Nicaj only introduced the certificate of disposition, Tr. at 116, which states that the case was "DISMISSED – MOTION OF DA." Zelman Dec., Ex. C. There was no additional testimony, from Nicaj or anyone else, as to the circumstances of the dismissal. Proof that the case was dismissed, without establishing the basis on which it was

9

dismissed, is insufficient to establish that the case was terminated in favor of the accused. *See Fate v. Charles*, 24 F. Supp. 3d 337, 342–43 (S.D.N.Y. 2014) (certificate of disposition "merely reflects that the . . . charges were dismissed; it does not provide any reasonable basis for concluding that 'the dismissal was one which [wa]s 'favorable' to him'") (quoting *Russo v. State of N.Y.*, 672 F.2d 1014, 1019 (2d Cir. 1982)); *Hayes v. Schultz*, 150 A.D.2d 522, 522, 541 N.Y.S.2d 115, 116 (2d Dep't 1989) ("The plaintiff did not meet her burden of establishing that the underlying criminal action terminated in her favor. The certificate of disposition of the criminal charges brought against her merely noted that the charge was dismissed. This leaves the question of the plaintiff's guilt or innocence unanswered.") (collecting cases). The Court cited explicitly to *Fate* and *Hayes* during the Rule 50 proceedings, Tr. at 202-03, and Nicaj has not argued that those cases have been overruled, or did not otherwise apply to the evidence as it was introduced at trial. Instead, Nicaj belatedly explains the context of the dismissal, and now for the first time attempts to introduce the criminal court record. Zelman Dec., Ex. D. However, Nicaj did not call any witness to provide this explanation at trial and did not offer any part of the criminal record into evidence.

Nicaj has provided no reason why the supporting deposition or other evidence that the dismissal was "favorable" was not introduced at trial. "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *NEM Re Receivables*, 187 F. Supp. 3d at 396. Additionally, he has not

10

described any hardship or extraordinary circumstance that would necessitate relief from the Court's judgment. *Bridgeway*, 132 F. Supp. 2d at 300. Motions for reconsideration strictly limit when new evidence can be considered by the Court "in the interests of finality and conservation of scarce judicial resources." *NEM Re Receivables*, 187 F. Supp. 3d at 395. Zelman's post-hoc explanation as to why Nicaj's criminal case was dismissed, Pl. Mem. at 8-9, is of no moment here and does not cure the failure to introduce evidence on his case-in-chief necessary to establish a malicious prosecution claim. Accordingly, this claim was properly dismissed, as the Court has no cause to consider the new evidence submitted by counsel after trial.[5]

### 3. Nicaj did not present a conversion claim at trial

"[C]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *AGFA Photo USA Corp. v. Chromazone, Inc.*, 82 A.D.3d 402, 403, 918 N.Y.S.2d 30, 31 (1st Dep't 2011) (quoting *Meese v. Miller*, 79 A.D.2d 237, 242, 436 N.Y.S.2d 496, 500 (4th Dep't 1981)); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837, 857 N.E.2d 528 (2006), *and certified question answered*, 8 N.Y.3d 283, 864 N.E.2d 1272 (2007). Thus, the ownership of Nicaj's vehicle is a relevant inquiry for purposes of a conversion claim. That being

---

[5] Given its ruling, the Court does not find it necessary to reach Nicaj's separate argument concerning probable cause. *See* Pl. Mem. at 9-10.

11

said, although Nicaj focuses on new arguments about the legal ownership of the vehicle (which were not raised at the time of Defendants' Rule 50 motion), Pl. Mem. at 11, questions about the vehicle's ownership were not the only reason that the Court granted Defendants' motion for judgment as a matter of law as to the conversion claim.

Crucially, Nicaj has previously admitted that he did not intend to present a conversion claim at trial. At the time of the Rule 50 motion, Nicaj's counsel argued that "Nicaj's vehicle was unlawfully seized," and that the jury should be charged that "seizure of a vehicle based upon a charge of operating an unlicensed vehicle for hire is unconstitutional." Tr. at 368. When asked what cause of action he was referring to, Nicaj's counsel stated the "due process cause of action." *Id.* at 371. However, when the Court noted that the complaint did not include such a cause of action, and inquired as to whether counsel was referring to the state law conversion claim, he acknowledged that he "never tried to prove a case of conversion." Tr. at 371; *see also* Tr. at 372 ("the word conversion has never come out of my mouth and I've never tried [to] prove a conversion claim."). Instead, at the trial, *id.* at 372-73, in his submission following the trial day, Letter, dated Jan. 31, 2017 ("Pl. Letter"), Dkt. No. 102, and in the memorandum accompanying his motion for a new trial, Pl. Mem. at 11–12, Nicaj has attempted to articulate a federal due process claim for the allegedly unlawful seizure of his vehicle. It is thus disingenuous to say the least for

Nicaj to claim that the Court erred in dismissing his conversion claim, when he admitted at trial that he was not pursuing such a claim.[6]

Furthermore, the Court has repeatedly considered and rejected Nicaj's contention that the seizure of his company's vehicle, "simply because he was issued a ticket . . . violated TLC rules and regulations" and was unconstitutional. Pl. Mem. at 11. Section 19-506(h)(1) of the New York City Administrative Code permits seizure of "any vehicle which [an officer] has probable cause to believe is operated or offered to be operated without a vehicle license," and to the extent that rule was held unconstitutional, it was only with regard to first-time violators of the rule. *Harrell v. City of N.Y.*, 138 F. Supp. 3d 479, 493 (S.D.N.Y. 2015), *on reconsideration in part sub nom. Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015). At the time of his arrest and the vehicle's seizure, Nicaj had previously been ticketed for operating a for-hire vehicle without a license in January 2013, so he was not a first-time offender. Plaintiff's Motion in Limine, dated June 15, 2016, Dkt. No. 69, at 5, Ex. D. Additionally, *Harrell*, on which Nicaj solely relies, was decided two years after Nicaj's car was towed and is not binding on this Court.

The Court has previously highlighted these deficiencies. At the pre-trial conference on September 16, 2016, the Court and the parties engaged in an extensive colloquy regarding the applicability of *Harrell* to this case. Transcript,

---

[6] It bears emphasis that Verchick was plaintiff's counsel who tried the case and made this concession but it is now Zelman, who did not attend the trial, who is attempting to effectively withdraw it.

13

dated Sept. 16, 2016 ("Sept. Tr."), at 6-16, Dkt. No. 99. Additionally, at the time of the Rule 50 motion, the Court reiterated that it had rejected any due process argument based on *Harrell*, Tr. at 387-88, and although the Court reserved decision and gave the parties the opportunity to make additional submissions on the issue, when Nicaj offered the same argument about *Harrell* yet again, *see* Pl. Letter, the Court finally rejected the request to charge the jury with a due process claim, again noting that it had repeatedly considered and rejected the *Harrell* argument. Tr. at 412-13. Here, Nicaj has merely reiterated that *Harrell* applies to his situation, without identifying anything the Court may have overlooked.

Finally, even had these issues not been fully aired already, Nicaj had opportunities to raise a federal due process claim (or even a state law conversion claim), but abandoned those causes of action. His complaint alleged a state law conversion claim, but no federal due process claim. Compl. ¶¶ 95-98. Defendants then argued that the conversion claim was too imprecise to present to the jury. Defendants' Pretrial Submissions Concerning Matters to be Resolved In Limine, dated June 17, 2016, Dkt. No. 68, at 20. After an extensive colloquy at the September 2016 pre-trial conference, the Court directed Nicaj to articulate what damages he was seeking for this claim and their legal basis. Sept. Tr. at 44–48; Order, dated Sept. 16, 2016, Dkt. No. 89. Yet Nicaj responded with a list of damages with no accompanying legal basis for them. Letter, dated Jan. 6, 2017, at 1, Dkt. No. 94. Notably, in both the parties' proposed jury charge and in their proposed verdict sheet, Nicaj did not include a claim either for conversion or for a

due process violation. *See* Jury Charge; Proposed Findings and Conclusions, dated June 24, 2016, Dkt. No. 82.[7] Perhaps fittingly, Nicaj has abandoned his conversion argument in his reply papers.

## C. Defendants' Request for Attorneys' Fees Is Denied

Defendants have requested the opportunity to pursue attorneys' fees for their time spent on this motion, as they contend that Nicaj lacked a good faith basis for continuing to litigate this case. Def. Mem. at 8. Nicaj's arguments are plainly on the fringes of legitimate advocacy, as they merely attempt to revive the same issues the Court already resolved after multiple opportunities for the parties to be heard. These failings are due no doubt to Zelman's failure to attend the trial or to order the trial transcript. The Court strongly discourages such practices as, at a minimum, counsel should not prepare post-trial briefing after a trial he did not attend without citations to the record to support his positions. Nonetheless, Defendants chose not to move for summary judgment in this case, as the Court observed during trial, Tr. at 361, which would have likely narrowed the issues and permitted the Court to decide these matters on a more developed record. To the extent this motion has allowed Nicaj a formal assessment of certain of his claims and why they were

---

[7] Nicaj did include a "Property Damage Claim," but the cited authority for the charge was a case discussing comparative negligence. *See* Jury Charge at 55–56 (citing *Aktas v. JMC Const. Co. Inc.*, No. 09-CV-1436 (MAD), 2013 WL 1785529, at *3 (N.D.N.Y. Apr. 25, 2013), *aff'd sub nom. Aktas v. JMC Dev. Co.*, 563 F. App'x 79 (2d Cir. 2014)). Defendants opposed the instruction on the same basis as their opposition to the conversion claim. *Id.* at 55.

dismissed, the Court cannot conclude that it was entirely frivolous. Accordingly, although it is a close call, no fees will be awarded.

## III. CONCLUSION

Because Nicaj has failed to raise any legal or factual matters that the Court overlooked or establish any extraordinary circumstances justifying relief, his motion for a new trial is denied. Defendants' request for attorneys' fees is also denied.

The Clerk is directed to close Docket Entry 110.

**SO ORDERED.**

Dated: October 6, 2017
New York, New York

JAMES L. COTT
United States Magistrate Judge